UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

PAUL FERRARO,

                         Plaintiff,

-against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, RALPH K. HONORE, and MARC
SLIPPEN,

                         Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF
DECISION AND ORDER**

13-cv-5837 (LDH) (JO)
15-cv-1117 (LDH) (JO)

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff Paul Ferraro brings the instant consolidated action against the New York City

Department of Education ("DOE"), Ralph K. Honore, and Marc Slippen (the "Individual

Defendants") (together, "Defendants"), alleging discrimination on the basis of disability,

retaliation, and hostile work environment under the Americans with Disabilities Act of 1990

("ADA"),[1] the New York State Human Rights Law ("NYSHRL") and the New York City

Human Rights Law ("NYCHRL"). Defendants move pursuant to Federal Rule of Civil

Procedure 56 to dismiss each action in its entirety.

**UNDISPUTED FACTS[2]**

      Plaintiff began working for the DOE as a tenured teacher at Public School 55Q ("P.S.

55Q") in September 1997. (Pl.'s Amended 56.1 Statement Response ("Pl.'s 56.1") ¶ 2, ECF No.

---

[1] By Order dated March 31, 2015, the Court dismissed the individual ADA claims against Honore and Slippen.
(Order Adopting R. & R., No. 13-cv-05837, ECF No. 22.)
[2] The foregoing facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to
admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If
the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will
be deemed admitted.").

1

37.)[3]  In March 2001, Plaintiff was diagnosed with multiple sclerosis ("MS"), which causes him

to experience a variety of symptoms, including numbness of the feet and torso.  (*Id.* ¶ 3.)

Plaintiff also has difficulty standing in the heat, walking up flights of stairs, and standing for

extended periods of time.  (*Id.*)  In 2002, Plaintiff disclosed his diagnosis to Defendant Slippen, a

fellow teacher.  (*Id.* ¶ 4.)  Defendant Honore became aware of Plaintiff's MS at some point

between 2001 and 2006, while he was an Assistant Principal at PS 55Q.  (*Id.* ¶ 7; Defs.' Reply

56.1 Statement ("Defs.' Reply 56.1") ¶¶ 95, 109-110, ECF No. 39.)

During his tenure as Assistant Principal, Honore consistently gave Plaintiff ratings of

"satisfactory," both for classroom observations and year-end ratings.  (Defs.' Reply 56.1 ¶¶ 111-

12.)  In 2007, Slippen was promoted to Assistant Principal, and Honore was promoted to

Principal.  (Pl.'s 56.1 ¶¶ 5-6.)  The following three years proceeded unremarkably.  In the fall of

2010, however, Plaintiff began to receive a stream of negative feedback from Defendants and

complaints from his students' parents.

## I.     The 2010-2011 School Year

On September 23, 2010, in response to concerns raised by students' parents, Honore and

Slippen met with Plaintiff.  (*Id.* ¶ 9.)  During that meeting, Parent-Coordinator Lena Corso was

left in charge of Plaintiff's class, along with two parent volunteers.  (*Id.* ¶ 10.)  When Plaintiff

returned to his classroom, the parent volunteers informed him that Ms. Corso said that Plaintiff

was not a good teacher, that his handwriting was barely legible, and that he had MS.  (*Id.* ¶ 11.)

Plaintiff informed Honore of the conversation later that day.  (*Id.*)  Honore instructed Plaintiff to

write an account of the incident and to submit it to him.  (*Id.*)  In response, Plaintiff wrote a letter

dated September 23, 2010, recounting that day's meeting with Honore and Slippen, as well as his

---

[3] For ease of reference, citations to docket entries herein refer to the docket of the latter-filed case, 15-cv-01117.
The parties' submissions on summary judgment were identical in both cases.

conversation with the parent volunteers upon returning to his classroom. (*Id.* ¶ 12.) Plaintiff's letter also stated that he had MS and included the allegation that, since disclosing his MS to Slippen in 2002, he had been "harassed and humiliated at P.S. 55Q by certain colleagues and administrators." (*Id.*)

On several other occasions that fall, parents of Plaintiff's students asked that their children be assigned to a different teacher. By letter dated September 30, 2010, Honore informed Plaintiff that a parent had complained about Plaintiff's teaching and requested that her child be moved to another class. (*Id.* ¶ 14.) The letter further stated that Ms. Elizabeth DeJean, the school's Early Childhood Coordinator, would assist Plaintiff in his classroom commencing October 4, 2010. (*Id.*) Plaintiff signed the letter to acknowledge its receipt and added the statement, "signed under harassment 9/20/10-present." (*Id.*) A November 10, 2010 letter from Slippen to Plaintiff summarized a meeting between Plaintiff, Slippen, and a different parent who had requested that his child be removed from Plaintiff's class. (*Id.* ¶ 15.) Slippen instructed Plaintiff to submit a plan by November 15, 2010, outlining how Plaintiff would make the child more comfortable in his classroom. (*Id.*) Plaintiff signed the letter to acknowledge receipt, and again added the statement, "signed under harassment 9/20/10-present." (*Id.*) Plaintiff submitted the requested plan on November 30, 2010, two weeks after the deadline to do so. (*Id.*)

On December 21, 2010, Honore informed the first-grade teachers at P.S. 55Q, including Plaintiff, that, due to changes in staffing and budgetary constraints, the school would "collapse" class 1-135, which was Plaintiff's class. (*Id.* ¶ 16.) Of the four first-grade classes at P.S. 55Q, only Plaintiff's class was collapsed. (Defs.' Reply 56.1 ¶ 179.) In January 2011, Plaintiff was reassigned to a position as a Math Intervention Specialist. (Pl.'s 56.1 ¶ 16.)

In March 2011, Plaintiff was accused of engaging in an incident of verbal abuse and corporal punishment against a student. (*Id.* ¶ 17.) Honore investigated the incident and determined that there was a basis for only the verbal abuse allegation. (*Id.*) On April 4, 2011, Honore issued a letter to Plaintiff's file concerning the incident. (*Id.*) On April 8, 2011, Plaintiff submitted a response stating, among other things, that, "While I, with regret, agree with the contents of the letter put in my file dated April 4, 2011, I would like to clarify a few details." (*Id.*)

At the close of the 2010-2011 school year, Honore made grade and class assignments for the upcoming year. Honore assigned Plaintiff to a second-grade classroom for the 2011-2012 school year. (*Id.* ¶ 19.) This assignment was one of three preferences that Plaintiff had requested. (*Id.*) On June 17, 2011, Plaintiff filed a grievance against Honore, alleging that Honore's failure to grant Plaintiff his first choice teaching assignment violated the collective bargaining agreement. (*Id.* ¶ 20.) Honore denied the grievance on June 23, 2011. (*Id.*) At the end of the 2010-2011 school year, Plaintiff received a rating of "satisfactory." (*Id.* ¶ 18.)

An undated document entitled "2011-2012 VERY Tentative Reorganization" outlined the assignment of teachers to classrooms for that school year. (*Id.* ¶ 21.) The document assigned Plaintiff to Room 113. (*Id.*) On the last day of the 2010-2011 school year, Honore advised the teachers at P.S. 55Q to anticipate that a new plan would be distributed in July 2011. (*Id.*) The new organization document assigned Plaintiff to Room 135, which had been Plaintiff's classroom for the previous school year. (*Id.*) Other teachers' classroom assignments were also altered. (*Id.*)

## II.     The 2011-2012 School Year

At the beginning of the 2011-2012 school year, the teachers at P.S. 55Q were instructed to submit a form to Honore by September 9, 2011, indicating whether they were missing any classroom books.  (*Id.* ¶ 23.)  Plaintiff failed to submit the form as required.  Instead, on September 12, 2011, Plaintiff asked a fellow teacher whether she had extra copies of certain textbooks that Plaintiff was missing.  (*Id.*)  On September 14, 2011, Honore instructed Plaintiff to submit the requested form by the end of the day.  (*Id.*)  Again, Plaintiff failed to do so. Plaintiff submitted the form on October 28, 2011, over a month and a half late.  (*Id.*)

During the month of October 2011, several other issues came to Defendants' attention regarding Plaintiff's performance.  On October 11, 2011, Honore issued a letter to Plaintiff stating that Plaintiff had not attended a required professional development session.  (Defs.' Reply 56.1 ¶ 195.)  Six days later, on October 17, 2011, Plaintiff met with Honore, Slippen, Plaintiff's union representative Lisa Como, and a parent of one of Plaintiff's students.  (Pl.'s 56.1 ¶ 24.) The parent requested that her child be removed from Plaintiff's class because her child did not have appropriate classroom materials available and needed a stricter teacher.  (*Id.*)  Honore assigned the child to a different class.  (*Id.*)  In a self-evaluation form dated October 18, 2011, Plaintiff gave himself several low scores of "1" ("Ineffective") and "2" ("Developing").  (*Id.* ¶ 25.)

In an undated letter, Honore notified Plaintiff that he would receive a formal observation during the week of December 14, 2011.  (*Id.* ¶ 26.)  At Plaintiff's request, Honore later rescheduled the formal observation for the first week of January 2012.  (*Id.*)  In advance of the observation, at Plaintiff's request, Plaintiff met with Ms. DeJean on December 7, 12, 14, and 20, 2011, concerning instructional methods in literacy and math.  (*Id.* ¶¶ 27, 29; Defs.' Reply 56.1 ¶

199.)  Several weeks later, Honore observed Plaintiff's class on January 10, 2012.  (Pl.'s 56.1

¶ 28.)  By letter dated January 19, 2012, Honore outlined certain concerns raised by his

observation and informed Plaintiff that he would be observed again after Plaintiff met with Ms.

DeJean to develop an instructional unit in math.  (*Id.*; Defs.' Reply 56.1 ¶ 200; McIntosh Decl.

Ex. X at D001193, ECF No. 42-24.)  Plaintiff met with Ms. DeJean another eight times between

January and March 2012.  (Pl.'s 56.1 ¶ 29.)

    In the months that followed, additional concerns arose regarding Plaintiff's conduct

toward his students.  In a letter dated February 14, 2012, Honore confirmed a meeting between

Plaintiff and the parent of one of his students.  (*Id.* ¶ 30.)  The parent had complained to Honore

that her child was scared by Plaintiff yelling at the class and that the child needed to be

challenged at grade level.  (*Id.*)  Plaintiff and the parent spoke privately and ultimately resolved

the parent's concerns.  (*Id.*)  On March 9, 2012, a classroom monitor for Plaintiff's class reported

that Plaintiff screamed at his students daily, called them "brats" and "jerks," and told them that

he did not like them.  (*Id.* ¶ 31.)  On March 15, 2012, Plaintiff and his union representative met

with Honore to review the allegations.  (*Id.* ¶ 31; McIntosh. Ex. N at 17, ECF No. 42-14.)  In a

March 19, 2012 letter, Honore notified Plaintiff that his conduct was in violation of Chancellor's

Regulation A-42 I.  (Pl.'s 56.1 ¶ 31.)  On March 20, 2012, a parent reported to the DOE Office of

Special Investigations ("OSI") that Plaintiff had thrown a book in his classroom, hitting her child

in the face and causing a bruise.  (*Id.* ¶ 32.)  Plaintiff denies having thrown the book.  (*Id.*)  After

OSI investigated the complaint, the investigator recommended that Honore "take strong

disciplinary action" against Plaintiff.  (*Id.*)

    On March 23, 2012, Honore conducted another observation of Plaintiff.  (*Id.* ¶ 33; Defs.'

Reply 56.1 ¶ 247.)  By letter dated April 19, 2012, Honore rated Plaintiff's lesson as

unsatisfactory and outlined his areas of concern. (Pl.'s 56.1 ¶ 33.) In another letter dated April 27, 2012, Honore outlined his concerns regarding Plaintiff's failure to properly record student data in the "Comprehension Accuracy Fluency and Expand" ("C.A.F.E.") binder, which related to a professional development initiative at the school. (*Id.* ¶ 34; McIntosh Decl. Ex. DD, ECF No. 42-30.) Honore included a memorandum dated April 27, 2012, in Plaintiff's official personnel file outlining Plaintiff's failure to follow instructions concerning the C.A.F.E. initiative. (Pl.'s 56.1 ¶ 33.)

Additional issues with Plaintiff's performance arose in May 2012. By letter dated May 7, 2012, Slippen noted that Plaintiff had been absent from school on April 25, 2012, and May 7, 2012, but, in violation of school policy, did not have substitute lesson plans prepared in advance in case of an absence. (*Id.* ¶ 35.) On May 18, 2012, Slippen conducted a formal observation of Plaintiff. (*Id.* ¶ 37.) In a letter dated May 24, 2012, Slippen rated Plaintiff's lesson as unsatisfactory and outlined areas of concern, including that Plaintiff's handwriting on the smart board and dry erase boards was "sloppy and hard to follow." (*Id.*) Plaintiff asked for a new easel that would allow him to write sitting down. (*Id.*) Plaintiff received the easel one week later. (*Id.*) On May 23, 2012, Slippen accused Plaintiff of verbally abusing his students. (*Id.* ¶ 39.) Honore investigated the allegation but concluded that it was unsubstantiated. (*Id.*)

On June 11, 2012, Plaintiff and his union representative met with Honore concerning Plaintiff's performance during the 2011-2012 school year. (*Id.* ¶ 40; Defs.' Reply 56.1 ¶ 223.) By letter dated June 20, 2012, Honore confirmed the discussion and stated that Plaintiff's overall performance would be rated as unsatisfactory. (Pl.'s 56.1 ¶ 40.) Plaintiff appealed the rating to the DOE's office of Appeals and Reviews on June 25, 2012. (*Id.* ¶ 41; Defs.' Reply 56.1 ¶ 230.) The appeal was ultimately denied on June 25, 2013, and the rating was sustained "as a

consequence of deficiencies in most areas of pupil guidance and instruction, and in all areas of classroom management." (Pl.'s 56.1 ¶ 41; Defs.' Reply 56.1 ¶ 231.)

### III.    The 2012-2013 School Year

For the 2012-2013 school year, Plaintiff again submitted his top three preferred teaching assignments. (Pl.'s 56.1 ¶ 42.) Honore assigned Plaintiff to teach kindergarten, his second choice. (*Id.*) Separately, Plaintiff also applied for, but did not receive, a math/science cluster position. (*Id.* ¶¶ 43-44.) Plaintiff filed a grievance on June 1, 2012, claiming that Honore violated the collective bargaining agreement by not awarding Plaintiff the math/science position and assigning Plaintiff to teach kindergarten. (*Id.* ¶ 44.) Honore denied the grievance on June 14, 2012, which prompted Plaintiff to file an appeal. (*Id.*; Defs.' Reply 56.1 ¶ 238; Wolin Decl. Ex. 64, ECF No. 44-64.) By memorandum dated September 28, 2012, Arbitrator Deborah Gaines denied Plaintiff's grievance after concluding that the selected candidate was better qualified for the math/science position than Plaintiff. (Pl.'s 56.1 ¶ 44.)

In September 2012, Plaintiff asked Honore to change his After School Intervention Services ("A.I.S.") assignment from a third floor classroom to a first floor classroom so that he would not have to climb stairs. (*Id.* ¶ 46.) On October 12, 2012, Honore informed Plaintiff that he would no longer be required to work with students during the A.I.S. period at all, but instead would be allowed to use the extra time for lesson planning and organizing his own classroom on the first floor. (*Id.*)

Issues with Plaintiff's performance continued through the fall of 2012. In October 2012, the parents of two of Plaintiff's students contacted the school, raising concerns about Plaintiff's teaching and classroom management. (*Id.* ¶ 47.) On December 7, 2012, Honore informed Plaintiff that the school photographer had received student lunch money mixed in with Plaintiff's

students' school picture payment orders. (*Id.* ¶ 49.) Plaintiff denied misplacing the lunch money. (Defs.' Reply 56.1 ¶ 257.) Honore reminded Plaintiff that he was expected to keep his classroom materials organized. (Pl.'s 56.1 ¶ 49.)

By letter dated January 19, 2013, Slippen provided Plaintiff with feedback to a lesson he had observed on December 12, 2012. (*Id.* ¶ 50.) Slippen noted that Plaintiff had failed to list a teaching point for the lesson and did not provide an appropriate lesson plan when requested to do so. (*Id.*) Slippen instructed Plaintiff to re-submit a plan for the lesson at issue, but Plaintiff did not submit one, even though Slippen re-sent the letter to Plaintiff several times. (*Id.*) On April 15, 2013, Plaintiff signed an acknowledgement that he had received Slippen's letter, adding the statement, "My response will follow at a later date. I do not agree with the contents of this letter, and consider the contents to be further harassment and retaliation." (*Id.*)

On March 19, 2013, Plaintiff requested that an observation set for April 11, 2013, be rescheduled because it conflicted with a hearing concerning his appeal of his previous unsatisfactory rating. (*Id.* ¶ 51.) Honore agreed to reschedule the observation to April 10, 2013. (*Id.*; Defs.' Reply 56.1 ¶ 258.) On April 3, 2013, Plaintiff again requested that the observation be rescheduled. (Pl.'s 56.1 ¶ 51.) Honore declined the request and conducted the observation as scheduled. (*Id.* ¶¶ 51-52.) Two days before the observation, Honore changed the subject matter of the lesson from literacy to math. (Defs.' Reply 56.1 ¶ 259.) By letter dated May 2, 2013, Honore rated Plaintiff's lesson as unsatisfactory and outlined his areas of concern. (Pl.'s 56.1 ¶ 52.) Plaintiff wrote a rebuttal to the report. (Defs.' Reply 56.1 ¶ 267.)

By letter dated May 2, 2013, Slippen documented that the previous day, he had provided Plaintiff with approximately three hours of classroom coverage to give Plaintiff additional time to complete his student assessments. (Pl.'s 56.1 ¶ 53.) The letter noted that when Slippen later

asked to see the assessments, Plaintiff informed him that he could not find all of the materials. (*Id.*)  Plaintiff then gave Slippen two documents, one of which was incomplete.  (*Id.*)

On May 22, 2013, Honore conducted another formal observation of Plaintiff.  (*Id.* ¶ 54; Defs.' Reply 56.1 ¶ 270.)  Honore rated the lesson as unsatisfactory.  (Pl.'s 56.1 ¶ 54.)  On June 17, 2013, Plaintiff met with his union representative and Slippen to discuss Plaintiff's annual performance review.  (Defs.' Reply 56.1 ¶ 272.)  On or about June 18, 2013, Honore informed Plaintiff that his overall performance for the 2012-2013 school year would be rated as unsatisfactory.  (Pl.'s 56.1 ¶ 55; Defs.' Reply 56.1 ¶ 275.)  On June 24, 2013, Plaintiff appealed the rating.  (Pl.'s 56.1 ¶ 56.)  By letter dated November 21, 2013, the DOE Office of Appeals and Reviews sustained the rating "as a consequence of poor pedagogical practices."  (*Id.*)

## IV.     The 2013-2014 School Year

Plaintiff was assigned to teach kindergarten again for the 2013-2014 school year.  (Pl.'s 56.1 ¶ 58.)  On October 3, 2013, Honore sent a request to the DOE HR Connect Medical Administration for a medical evaluation of Plaintiff.  (*Id.* ¶ 60.)  Honore explained that the basis of his request was Plaintiff's inability to "organize, line-up, and lead students to a safe area without the assistance of a paraprofessional who had to help him physically walk in and out of the school building during an emergency situation."  (*Id.*)  Plaintiff reported for a medical examination as directed on October 16, 2013.  (*Id.* ¶ 61.)  Following the exam, Plaintiff was found fit for duty with accommodations, but the results did not specify what those accommodations should be.  (*Id.*)

On November 21, 2013, November 22, 2013, December 5, 2013, and January 6, 2014, Defendants conducted observations of Plaintiff's classroom.  (*Id.* ¶¶ 64, 65, 67.)  As to each observation, Plaintiff was consistently rated as "ineffective" or "developing" in all but one or

two of the applicable categories. (*Id.* ¶¶ 64, 65, 67.) In a letter to Plaintiff dated January 31, 2014, Honore recommended that Plaintiff participate in Peer Observation and Evaluation ("PIP Plus,") a program developed for teachers identified as being in need of instructional improvement and in danger of having administrative charges filed against them. (*Id.* ¶ 68; McIntosh Decl. Ex. X at D001334.) Honore explained that he made the recommendation in light of Plaintiff's need for improvement in his teaching performance. (Pl.'s 56.1 ¶ 68; McIntosh Decl. Ex. X at D001334.) On February 14, 2014, Plaintiff declined Honore's invitation to participate in the program, stating that he did not believe that his teaching practices warranted a PIP Plus mentor. (Pl.'s 56.1 ¶ 69.) Plaintiff further noted that he was already on a waitlist to participate in a different program to "sharpen his teaching craft." (*Id.*)

On February 26, 2014, Slippen conducted a formal observation of Plaintiff and rated him as "ineffective" or "developing" in every applicable category. (*Id.* ¶ 70.) On March 4, 2014, Honore met with Plaintiff and his union representative to discuss Plaintiff's teaching performance. (*Id.* ¶ 71.) Honore informed Plaintiff that he was at risk of receiving an adverse rating for the 2013-2014 school year. (*Id.*) On March 14, 2014, Honore issued an "action plan" to Plaintiff, which identified specific actions that Plaintiff was required to take to improve his teaching performance. (*Id.* ¶ 72.) Plaintiff refused to sign the action plan, and instead wrote a response stating that he "believe[d] that the amount of demands and the short and consistent [sic] time frame given to accomplish these tasks are onerous and not given to any other licensed pedagogue at P.S. 55Q." (*Id.*) Plaintiff further stated that he believed that the action plan was unnecessary, "consistent with the conditions of harassment that [he had] worked under for many years," and "set up for [him] to fail." (*Id.*; McIntosh Ex. UU at D001486, ECF No. 42-47.) One other teacher, Michael Yenni, also received an action plan. (Defs.' Reply 56.1 ¶ 289.)

On March 24, 2014, Honore conducted another informal observation of Plaintiff and rated him as "ineffective" or "developing" in all applicable categories. (Pl.'s 56.1 ¶ 73.) Honore provided recommendations as to how Plaintiff might improve his performance. (*Id.*) That same day, Honore issued a letter to Plaintiff regarding his lesson plans for the week. (*Id.* ¶ 74.) Honore noted certain problems with the plans and identified the particular elements that were missing. (*Id.*) Honore reminded Plaintiff that he was to use his action plan as a guide for his lesson plans. (*Id.*) Plaintiff was warned that his failure to comply with the action plan could lead to an adverse rating for the 2013-2014 school year. (*Id.*)

On April 3, 2014, Honore issued another letter to Plaintiff outlining problems with Plaintiff's lesson plans for the week of March 31, 2014. (*Id.* ¶ 75.) Honore noted that Plaintiff had missed deadlines to submit his lesson plans and explained that Plaintiff's failure to meet future deadlines would be considered non-compliant. (*Id.*) Plaintiff signed the letter on April 4, 2014, adding the comment, "I need the weekends to properly plan my lessons for the next week. The lessons that I send to Ms. Kaso for my kindergarten I.C.T. class are as explicit as I can make them. I am doing the best I can." (*Id.*) One week later, on May 6, 2014, Slippen conducted an informal observation of Plaintiff and rated him as "ineffective" or "developing" in all applicable categories. (*Id.* ¶ 77.)

## V. Plaintiff's Requests for Accommodation

On September 5, 2013, Plaintiff submitted, for the first time, a DOE Accommodation Request Form, which was supported by notes from his treating doctors. (*Id.* ¶ 59.) Plaintiff requested the following accommodations: (1) air conditioning;[4] (2) the use of a manual rolling

---

[4] Plaintiff does not dispute that he testified that he had air conditioning in his classroom every year except 1998. (Defs.' Reply 56.1 ¶¶ 133, 243; Wolin Decl. Ex. 1 at 90:16-24, ECF No. 44-1.) However, through 2013, Plaintiff complained about the heat in his classroom. During Plaintiff's May 18, 2012 observation by Slippen, for example, Plaintiff complained that the classroom was "really hot" and that the temperature made it difficult to stand. (Wolin

"Rollator" walker; (3) a "teach stool" with wheels; (4) an escort to walk his students to out-of-classroom destinations; (5) to never be required to stand on a desk or chair; (6) to never climb stairs; (7) a portable classroom telephone on his desk; and (8) to not be required to go on school trips. (*Id.*)

On October 10, 2013, the DOE notified Plaintiff that his request for accommodation had been approved, in large part. (*Id.* ¶ 63.) Plaintiff was informed that he would be provided with central air conditioning, would be allowed to use a rolling walker, and would be provided with a teaching stool with wheels. (*Id.*) In addition, Plaintiff was informed that he would not be required to escort students or accompany them on school trips. (*Id.*) As to Plaintiff's remaining requests, the DOE notified him that the desk telephone was "not medically warranted" and advised him that there was no expectation for staff members to stand on chairs or desks in performing the essential functions of their jobs. (*Id.*) Honore was also informed of the accommodations that were deemed medically warranted and confirmed that Plaintiff would be provided with those accommodations. (*Id.* ¶¶ 62-63; Defs.' Reply 56.1 ¶ 145-150.) In addition, Plaintiff later asked for a portable air conditioner instead of the central air provided for in his list of accommodations. (Defs.' Reply 56.1 ¶¶ 149-50.)

On May 9, 2014, Plaintiff reported that he had fallen in his classroom the previous day because "it was a warm day with 98% humidity." (Pl.'s 56.1 ¶ 78.) Plaintiff requested to be placed on short-term leave, but his request was denied because he failed to submit the required documentation. (*Id.*) On May 22, 2014, DOE Disability Coordinator William Brewton emailed

---

Decl. Ex. 1 at 70:23-25; 71:10-11.) Plaintiff did not inform Slippen that this symptom was related to his MS. (*Id.* at 71:6-9.) Plaintiff also states that the classroom to which he was assigned during the 2012-2013 school year did not have air conditioning. (Defs.' Reply 56.1 ¶ 243.) Plaintiff complained to a custodian on several occasions that it was not working properly. (Pl.'s 56.1 ¶ 45.) Plaintiff contends that he had no or insufficient air conditioning on hot days and that his individual request for a portable air conditioner was denied. (Defs.' Reply 56.1 ¶ 149.)

Honore to inform him that Plaintiff had called the OEO.  (*Id.* ¶ 80.)  The call concerned a letter

the school staff received, which indicated that the central air conditioning would not be turned on

until May 29, 2014.  (*Id.* ¶ 80.)  According to Brewton, Plaintiff had reported that he was

assigned to Room 111 for a four-day period.  (*Id.*; McIntosh Decl. Ex. TT at D001851, ECF No.

42-46.)  Room 111 had a portable air conditioning unit.  (*Id.*)  Brewton asked Honore to ensure

that Plaintiff was assigned to a first-floor room with central air conditioning.  (*Id.*)  Brewton

further stated that, if Plaintiff was in a room with central air conditioning, the air conditioning

needed to be turned on.  (*Id.*)  The next day, May 23, 2014, Honore confirmed that the central air

was on.  (*Id.*)

## VI.    3020-a Proceedings

On April 29, 2014, pursuant to New York Education Law § 3020-a, the DOE charged

Plaintiff with nine counts of incompetency and misconduct for his conduct and performance

during the 2011-2012, 2012-2013, and 2013-2014 school years.  (*Id.* ¶ 76.)  On May 12, 2014,

the DOE notified Plaintiff that, due to the pending 3020-a charges, he would be reassigned from

teaching to administrative duties.  (*Id.* ¶ 79.)  Plaintiff was charged with the following

specifications in connection with his 3020-a proceedings:

(1) Plaintiff failed to properly, adequately, and/or effectively plan, and/or execute separate
lessons during the 2011-2012, 2012-2013, and 2013-2014 school years;

(2) Plaintiff violated Chancellor's Regulation A-421 when he used poor professional
judgment and/or engaged in unprofessional conduct by referring to students as "brats"
and/or "jerks";

(3) Plaintiff violated Chancellor's Regulation A-421, used poor professional judgment,
and/or engaged in unprofessional conduct, in that he screamed at students;

(4) Plaintiff violated Chancellor's Regulation A-421, used poor professional judgment,
and/or engaged in unprofessional conduct, in that he told students that he did not like
them;

(5) Plaintiff failed to collect students' "C.A.F.E." vocabulary data;

(6) Plaintiff neglected his duties in failing to share his correct class schedule with administrators, as referred to in a letter dated June 20, 2012;

(7) Plaintiff failed to follow directives, neglected his duties, and/or engaged in unprofessional conduct, in that he failed to submit substitute lesson plans, as referred to in a letter dated June 20, 2012;

(8) Plaintiff neglected his duties and/or engaged in unprofessional conduct, in that he failed to attend a professional development meeting, as referred to in a letter dated June 20, 2012; and

(9) Plaintiff failed during each of the school years in question to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development.

(Pl.'s 56.1 ¶ 82; Defs.' Reply 56.1 ¶ 296.)

A hearing was held by Hearing Officer Haydee Rosario over seven nonconsecutive days between January 12, 2015, and March 26, 2015. (Pl.'s 56.1 ¶ 83; Defs.' Reply 56.1 ¶ 300; McIntosh Decl. Ex. AAA, at D001778 (Decision of Hearing Officer Rosario), ECF No. 42-53.) Plaintiff was represented by counsel and testified on his own behalf. (Pl.'s 56.1 ¶ 83.) Although he had the opportunity to present witnesses, he did not call any. (*Id.*) Plaintiff's counsel cross-examined the DOE's witnesses, including Honore, Slippen, kindergarten teacher Shelia DeVine, and Ms. DeJean. (*Id.*)

On August 3, 2015, the Hearing Officer issued a decision sustaining Specifications 1 and 5-9 and dismissing Specifications 2-4 for insufficient evidence. (*Id.* ¶ 84; Defs.' Reply 56.1 ¶ 301.) The Hearing Officer also noted that she had "considered [Plaintiff]'s claim that the formal and informal observations were rated unsatisfactory or inefficient in retaliation" for the various complaints he had filed. (Pl.'s 56.1 ¶84; McIntosh Decl. Ex. AAA, at D001826.) The Hearing Officer found that "the credible record d[id] not support the claim of retaliation or the claim that the observations and ratings were wrongfully motivated," and further noted that there was no evidence that any of the actions against Plaintiff were "tainted by animus, hostility or any other

inappropriate consideration." (Pl.'s 56.1 ¶ 86; McIntosh Decl. Ex. AAA, at D001826-27.) Nor did the Hearing Officer find that the timing of Plaintiff's observations and ratings indicated any retaliatory animus. (Pl.'s 56.1 ¶ 86.) The Hearing Officer also rejected Plaintiff's claims that his medical condition prevented him from being "at his best" when he was observed. (McIntosh Decl. Ex. AAA, at D001827.) The Hearing Officer concluded that the record was "devoid of any evidence" that any of Plaintiff's pedagogical deficiencies were caused by his medical condition and that it was "unclear, on this record, what kind of reasonable accommodation would be required for him to perform the essential aspect of his job, which is to teach and to provide a valid educational experience for his students." (*Id.*) The Hearing Officer determined that Plaintiff's employment should be terminated. (Pl.'s 56.1 ¶ 84.) Accordingly, Plaintiff was terminated effective August 3, 2015. (Defs.' Reply 56.1 ¶ 302.)

On August 12, 2015, Plaintiff filed an Article 75 petition in New York State Supreme Court for review of Hearing Officer Rosario's decision. (Pl.'s 56.1 ¶ 89.) By decision and order dated April 11, 2016, Justice Joan Lobis denied Plaintiff's petition and affirmed the Hearing Officer's decision. (*Id.* ¶ 91.)

## VII. Plaintiff's Protected Activity

The record contains a number of complaints by Plaintiff regarding disability discrimination and retaliation. As noted above, Plaintiff referred to Defendants' purported ongoing pattern of discrimination and retaliation several times in response to their letters criticizing his pedagogy and classroom management. (*E.g.*, *id.* ¶ 15.) Plaintiff also filed a number of formal discrimination complaints, both with the OEO and the U.S. Equal Employment Opportunity Commission ("EEOC"). On September 28, 2010, Plaintiff filed a complaint with the OEO based on Corso's disclosure of Plaintiff's MS to the two parent volunteers. (*Id.* ¶ 13.)

The OEO investigator found no evidence that Corso had discriminated against Plaintiff. (*Id.*)

Plaintiff filed charges of discrimination with the EEOC on July 13, 2011, December 5, 2012,

June 27, 2013, and June 9, 2014, alleging discrimination on the basis of disability and retaliation

during the 2010-2011, 2011-2012, 2012-2013, and 2013-2014 school years. (*Id.* ¶¶ 22, 48, 57,

81.) The EEOC issued right to sue letters in response to each charge of discrimination. (*Id.*

¶¶ 22, 48, 57, 81.)

Plaintiff also filed two lawsuits during his tenure at P.S. 55Q. On January 9, 2012,

Plaintiff filed an action in New York State Supreme Court against Defendants, alleging

discrimination, retaliation, and a hostile work environment. (Defs.' Reply 56.1 ¶ 198; Wolin

Decl. Ex. 119, ECF No. 44-119.) On October 24, 2013, Plaintiff filed his first complaint in the

instant action (the "2013 action"). (Defs.' Reply 56.1 ¶ 312.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material

fact exists when the evidence as to a fact that might affect the suit's outcome is such that a

reasonable jury could find in favor of the non-movant at trial. *Anderson*, 477 U.S. at 248. At

summary judgment, the movants bear the initial burden of demonstrating the absence of a

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also*

*Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movants meet that burden,

the non-movant may defeat summary judgment only by producing evidence of specific facts that

raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Anderson*, 477 U.S. at 248;

*Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to view all such facts in the

light most favorable to the non-movant, drawing all reasonable inferences in his favor. *Anderson*, 477 U.S. at 255. Still, to survive summary judgment, a non-movant must present concrete evidence and may not rely on mere conclusory or speculative claims or denials. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial."); *Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 325 (E.D.N.Y. 2015) ("[B]ald assertions, unsupported by evidence, will not satisfy the summary judgment standard.") (internal quotation marks omitted)).

## DISCUSSION

### I. Collateral Estoppel

Defendants move, as a threshold matter, for summary judgment as to all claims on the ground that they are barred by the doctrine of collateral estoppel. (Defs.' Mem. Law Supp. Mot. Summ. J. 3, ECF No. 41.) Collateral estoppel bars a plaintiff's claims when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (quoting *In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991)). This doctrine applies "irrespective of whether the tribunals or causes of action are the same." *El-Shabazz v. State of New York Comm. on Character and Fitness for the Second Judicial Dep't*, 428 F. App'x 95, 96-97 (2d Cir. 2011) (summary order). Of particular significance here, the Second Circuit has held that Section 3020-a hearings are administrative adjudications whose findings must be given preclusive effect. *Burkybile v. Bd. of*

*Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311 (2d Cir. 2005)

(articulating preclusive effect of 3020-a hearings).

### A. The Issues Raised in the 3020-a Hearing Are Identical to Those in the Instant Case

The issues raised in Plaintiff's 3020-a hearing are identical to those raised in this case.

That is, Plaintiff's 3020-a hearing concerned whether there was just cause for his termination.

(McIntosh Decl. Ex. AAA at D001778.)  At that hearing, Plaintiff raised as a defense to each of

the enumerated charges that Defendants' conduct was motivated by discriminatory and

retaliatory animus.  (*See, e.g.*, McIntosh Ex. B at 469:23-471:13, ECF No. 42-2 (argument by

Plaintiff's counsel that discrimination was Plaintiff's defense).)  In the instant action, Plaintiff

contends that he received unsatisfactory ratings and was terminated because of his disability,

whereas Defendants argue that Plaintiff was terminated due to incompetence and other problems

with his performance as a teacher.  Such identity of issues has been held sufficient to satisfy the

first prong of the collateral estoppel inquiry.  *See Mohammed v. New York City Dep't of Educ.*,

932 F. Supp. 2d 420, 428 (E.D.N.Y. 2013) (finding identity of issues where issue of whether

Plaintiff's termination was based on impermissible considerations or performance concerns was

raised in 3020-a hearing).  The same conclusion is warranted here.

### B. Whether the Issues Were Actually Litigated and Actually Decided

Courts in the Second Circuit have held that, where a federal claim was previously raised

as a central defense, a hearing officer necessarily decided the claim for purposes of collateral

estoppel.  *Mazur v. N.Y. City Dep't of Educ.*, 53 F. Supp. 3d 618, 631 (S.D.N.Y. 2014)

("Plaintiff's claims of age and disability discrimination were necessarily decided in the 3020–a

hearing in order to support a final judgment because they were her central defenses."), *aff'd*, 621

F. App'x 88 (2d Cir. 2015).  Here, the claims at issue in the instant action are disability

discrimination, retaliation, and hostile work environment. A review of the 3020-a hearing transcript reveals that Plaintiff raised retaliation and discrimination as defenses to the nine specifications brought against him. These issues were expressly decided by the Hearing Officer.

During Plaintiff's case in chief, for example, Plaintiff's counsel represented that Plaintiff's retaliation claim was "related to his defense," and that "the disciplinary letters and the unsatisfactory observations and annual ratings were issued in retaliation for the number of different charges that he's filed related to his claim of discrimination." (McIntosh Decl. Ex. B. at 699:16-23.) Moreover, Plaintiff's counsel examined Plaintiff and cross-examined the Defendants on the issue of retaliation and their motivation for giving Plaintiff poor ratings. (*Id.* at 480:1-13; 318:8-25, 319:1-24.) Plaintiff's discrimination claims were similarly raised by Plaintiff's counsel as "related to [Plaintiff's] defense." (*Id.* at 469:23-471:23.) Specifically, Plaintiff's counsel cross-examined Defendants and questioned Plaintiff at length during his direct examination about his disability, its effects on him, his requests for accommodations, the implementation of those accommodations, and the Defendants' observations, criticisms, and poor ratings of Plaintiff's pedagogy. (*Id.* at 309:20-24; 310:8-9; 319:12-24; 480:14-482:25; 549:8-16; 549:17-550:22; 554:24-555:1-21; 679:17-682:20; 700:15-25, 701:1-706:25; 791:21-793:8.)

Ultimately, the Hearing Officer concluded that "the credible record [did] not support the claim of retaliation or the claim that the observations and ratings were wrongfully motivated." (McIntosh Decl. Ex. AAA at D001826.) The Hearing Officer found that there was "no evidence to show that Principal Honore or AP Slippen harbored any animosity or hostility against Ferraro because of the numerous complaints that he filed that are related to his medical condition." (*Id.* at D0001827.) Rather, she concluded that Plaintiff's pedagogical deficiencies were "unrelated to

his medical condition" and found that Defendants' observations were "not tainted by . . . any other inappropriate consideration." (*Id.*) The Hearing Officer also considered Plaintiff's requests for accommodations, observed that Plaintiff had been afforded appropriate accommodations, and noted that she was "not persuaded by the suggestion that [Plaintiff] could have adequately or effectively planned or executed his lessons" with accommodations. (*Id.*) On this record, the Court is satisfied that Plaintiff's retaliation and discrimination claims were actually raised and actually decided at the 3020-a hearing.

The Court declines, however, to find that Plaintiff's hostile work environment claims were actually litigated or decided. Although Plaintiff raised discrimination and retaliation as defenses to the specifications lodged against him, he did not raise a hostile work environment as a defense. The Hearing Officer did not expressly consider or decide Plaintiff's complaints about his work environment, and therefore, Plaintiff is not estopped from bringing such claims now. *See Mohammed*, 932 F. Supp. 2d at 430 (retaliation claim not barred by collateral estoppel where claim was not "actually" decided or necessary to Hearing Officer's decision); *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 363 (S.D.N.Y. 2016) (plaintiff was not estopped from pursuing retaliation claim that was not previously expressly decided at 3020-a hearing); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 471 (S.D.N.Y. 2011) (discrimination and retaliation claims were not estopped where it was undisputed that plaintiff's 3020-a hearing did not directly address plaintiff's claims of retaliation or discrimination).

## C. Full and Fair Opportunity to Litigate and Necessary to Support Judgment on the Merits

Plaintiff had a full and fair opportunity to litigate his claims. Plaintiff's 3020-a hearing was held over seven days; Plaintiff and Defendants were represented by counsel; there was ample opportunity to present evidence and arguments; and witnesses were examined and cross-

examined under oath.[5]  (McIntosh Ex. AAA at D0001778.)  Nothing more is required to meet

this element.  *See Mohammed*, 932 F. Supp. 2d at 428 (finding fair opportunity to litigate where

parties were represented by counsel and had "robust" opportunity to present evidence); *Smith v.*

*N.Y. City Dep't of Educ.*, 808 F. Supp. 2d 569, 580-81 (S.D.N.Y. 2011) (finding full and fair

opportunity to litigate existed where Plaintiff was represented by counsel over multiple-day

hearing involving examination and cross-examination of witnesses and introduction of

evidence).

Furthermore, the Hearing Officer's findings concerning Plaintiff's allegations of

retaliation and discrimination were necessary to support her judgment on the merits.  In reaching

her findings as to the specifications against Plaintiff, the Hearing Officer was required to

consider, among other things, the propriety of the negative observations and ratings Plaintiff

received, whether Plaintiff's disability was accommodated, and whether any action was taken

against Plaintiff based on discriminatory animus or retaliatory motive.  *See Smith v. N.Y. City*

*Dep't of Educ.*, 808 F. Supp. 2d 569, 581 (S.D.N.Y. 2011) ("[I]t is clear that the findings of the

hearing officers regarding the propriety of the adverse employment action were not only

necessary to support a valid and final judgment on the merits, but that those finds [sic] were the

key conclusions reached at the hearings."); *Batyreva v. N.Y. City Dep't of Educ.*, No. 07 CIV

4544, 2010 WL 3860401, at *15 (S.D.N.Y. Oct. 1, 2010) (in deciding that the negative

evaluations were fair and reasonable, arbitrator necessarily determined that they were not

animated by discriminatory or retaliatory intent), *aff'd*, 464 F. App'x 31 (2d Cir. 2012).

---

[5] Notably, the Hearing Officer's findings were upheld on review by Justice Lobis of the New York State Supreme Court.  (Pl.'s 56.1 ¶ 91; McIntosh Decl. Ex. BBB, ECF No. 42-54.); *Davis v. New York City Dep't/Board of Educ.*, No. 14-cv-2281, 2015 WL 5772204, at *8 (E.D.N.Y. Sept. 29, 2015); *Mohammed*, 932 F. Supp. 2d at 428 (discrimination claims were collaterally estopped due to factual findings from 3020-a hearing upheld on Article 75 review).

In sum, Plaintiff's retaliation and discrimination claims satisfy all four prongs of the collateral estoppel analysis. Therefore, these claims are collaterally estopped.

## II.   Disability Discrimination

Even if collateral estoppel did not apply in this case, summary judgment would still be warranted as to Plaintiff's disability discrimination claims.

### A.  Discrimination Based on Adverse Action

Claims of discrimination based on an adverse employment action under the ADA and NYSHRL are evaluated under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). At the first step of this analysis, a plaintiff bears the burden of establishing a prima facie case of employment discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified for the position he held; and (3) he suffered an adverse employment action that (4) occurred under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). If the plaintiff makes out a prima facie case, the burden of production shifts to the defendants, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* at 498-99. If the defendants articulate such a reason, the presumption of discrimination falls away, and the plaintiff must prove that the reason offered by the defendant was pretextual. *Id.* at 499. In other words, to survive summary judgment, a plaintiff must offer evidence from which a reasonable jury could conclude that an adverse action taken by the defendant was motivated by discrimination. *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 187 (E.D.N.Y. 2013) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)). Under the more lenient NYCHRL standard, a plaintiff must simply demonstrate by a preponderance of the evidence that he was "treated less well than other

employees because of [his protected characteristic]." *Mihalik v. Credit Agricole Cheuvreux North Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

Although a negative rating or evaluation alone is not an adverse employment action, such actions may rise to the level of an adverse employment action if they result in a materially adverse change in the terms and conditions of employment. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (negative evaluations not adverse unless they trigger other negative consequences in terms and conditions of employment). Here, Plaintiff was ultimately terminated, in part, because of his continued failure to improve his pedagogical performance. (See McIntosh Decl. Ex. AAA at D001824 (sustaining specification regarding Plaintiff's continued poor performance).) The Court therefore construes Plaintiff's negative evaluations and ratings as adverse employment actions.

The litany of other actions alleged by Plaintiff, however, are not adverse employment actions. Honore did not discriminate against Plaintiff when he referred Plaintiff to a medical exam pursuant to NYSEL § 2568 out of concern about the safety of students after an emergency situation. (McIntosh Decl. Ex. SS at D000737, ECF No. 42-45.) *See Grassel v. Dep't of Educ. of City of N.Y.*, No. 12-CV-1016 (PKC), 2017 WL 1051115, at *4 (E.D.N.Y. Mar. 20, 2017) (medical evaluation does not violate the ADA when shown to be job-related and consistent with business necessity); *Solomon v. N.Y. City Bd. of Educ.*, No. CV-95-1878, 1996 WL 118541, at *5 (E.D.N.Y. Mar. 6, 1996) (same). Defendants' failure to give Plaintiff his first choice teaching assignments was not an adverse employment action, because there is no evidence that it affected the terms and conditions of his employment, such as his salary level. *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) (scheduling and assignment issues involving course loads are generally not materially adverse employment actions unless they are

so burdensome as to constitute a departure from normal academic practice; rather, assignments that violate a collective bargaining agreement are "garden-variety academic organizational changes, grievable under union agreements"); *Castro v. City of New York*, 24 F. Supp. 3d 250, 264 (E.D.N.Y. 2014) ("[S]imply being assigned undesirable work duties . . . [is] insufficient to establish adverse employment action, since [it does] not have a material impact on the terms and conditions of plaintiff's employment."). Honore's investigation into allegations of verbal abuse was not an adverse action, because the investigation was later dropped. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568-70 (2d Cir. 2011) (distinguishing "materially adverse" actions from "trivial harms" or "petty slights" and determining that an investigation regarding plaintiff that did not result in discipline was the latter). Nor was any criticism of Plaintiff unrelated to his ratings and evaluations an adverse employment action. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 216 (E.D.N.Y. 2014) (quoting *Tepperwien*, 663 F.3d at 570) ("Criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."). Further, Plaintiff has not demonstrated that the collapsing of his class was adverse, because there is no evidence that it altered the terms and conditions of his employment.[6] *See Castro*, 24 F. Supp. 3d at 264.

The Court is also at a loss to discern circumstances that give rise to an inference of discrimination. Plaintiff fails, for example, to provide direct evidence of discrimination, such as inflammatory or discriminatory comments regarding Plaintiff's disability, in giving Plaintiff

---

[6] In addition, Defendants have provided evidence that the class was collapsed for budgetary reasons, which provides a legitimate, non-discriminatory reason for collapsing Plaintiff's class. *See Kron v. Moravia Cent Sch. Dist.*, 5 F. App'x 60, 61 (2d Cir. 2001) (summary order) (budget shortfall provided legitimate, non-discriminatory reason for terminating plaintiff). Plaintiff has not demonstrated that this act was mere pretext for discrimination. *See id.* (finding summary judgment was properly granted on discrimination claim because plaintiff failed to present evidence rebutting articulated reason for termination).

negative evaluations of classroom observations or unsatisfactory year-end ratings. *See, e.g.*, *Delia v. Donahoe*, 862 F. Supp. 2d 196, 219-20 (E.D.N.Y. 2012) (granting defendant's motion for summary judgment on discrimination claim based on his reassignment where Plaintiff "ha[d] not pointed to any direct evidence of discrimination, such as disparaging comments.")

Moreover, Plaintiff has not provided any indirect evidence of discrimination by identifying any comparators whose treatment by Defendants would support an inference of discrimination. When relying on evidence of disparate treatment to raise an inference of discrimination, a plaintiff must show that he was similarly situated in all material respects to the individuals with whom he seeks to compare himself. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). A plaintiff and his comparators are not similarly situated where, for example, they differ in experience, tenure, or other factors that typically affect an employee's rate of pay. *Simpson v. Metro-North Commuter R.R.*, No. 04-cv-2565, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) (citing *DeJesus v. Starr Technical Risks Agency, Inc.*, No. 03-cv-1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004)) ("to be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history, all of which affect an employee's rate of pay"); *cf. Mandell*, 316 F.3d at 379 (plaintiff adduced sufficient evidence that comparators were similarly situated where they had similar qualifications and seniority). The record is devoid of evidence demonstrating that any individuals outside of Plaintiff's protected class were similarly situated to him. Without such support, Plaintiff cannot indirectly demonstrate an inference of discrimination and therefore cannot make out a prima facie case of disability discrimination.

Even if Plaintiff could establish a prima facie case of discrimination, Defendants have sufficiently adduced evidence that they had legitimate, non-discriminatory reasons for their poor evaluations and ratings of Plaintiff. *See McPhatter v. New York City*, 2009 WL 2412980, at *4-5 (E.D.N.Y. July 30, 2009) (describing Defendants' burden of production once prima facie case is established). It is undisputed that Plaintiff repeatedly failed to comply with his supervisors' directives, violated school policies, fell short in his pedagogy, and refused assistance when offered. Such conduct over the course of several years provided Defendants with a legitimate, non-discriminatory basis for their negative assessments of Plaintiff. *See Missick v. City of New York*, 707 F. Supp. 2d 336, 349 (E.D.N.Y. 2010) (plaintiff's repeated negative evaluations by different evaluators and violations of DOE policies on several occasions provided separate independent bases for disciplinary action against plaintiff). Because Plaintiff has not proffered any evidence to demonstrate that the Defendants' legitimate reasons for their assessments were mere pretext, Plaintiff's discrimination claims under the ADA and NYSHRL would have to be dismissed even if they were not already collaterally estopped.

So, too, would the Court dismiss Plaintiff's NYCHRL discrimination claim. The NYCHRL makes it an unlawful discriminatory practice for an employer to discharge an employee because of the actual or perceived disability of that individual. *Spiegel v. Schulmann*, 604 F.3dd 72, 82 (2d Cir. 2010) (quoting N.Y. City Admin. Code § 8–107(1)(a)). As with federal and NYSHRL claims, courts evaluating claims of discrimination under the NYCHRL apply the three-step burden-shifting *McDonnell Douglas* framework. *Williams v. Regus Mgmt. Grp. LLC*, 836 F. Supp. 2d 159, 171 (S.D.N.Y. 2011). Within that framework, however, the court must undertake a separate analysis to address the NYCHRL's "uniquely broad and remedial purposes, which go beyond those of counterpoint state or federal civil rights laws." *Id.*

(quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 30 (1st Dep't 2009)). Even with this broad remedial purpose in mind, the Court nevertheless finds that the record does not support the inference of discrimination necessary to sustain Plaintiff's NYCHRL claim. Accordingly, were it not already barred by collateral estoppel, the Court would also find that Plaintiff's NYCHRL discrimination claim failed on the merits.

## B. Discrimination Based on Failure to Accommodate

Plaintiff's claim that Defendants discriminated against him by failing to accommodate his disability also fails on the merits. As with Plaintiff's other discrimination claims, failure to accommodate claims under the ADA and NYSHRL are also subject to the *McDonnell Douglas* burden-shifting analysis. *Sista v. CDC Ixis North Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (affirming district court's grant of summary judgment on plaintiff's ADA claim). A plaintiff makes out a prima facie case of failure to accommodate under the ADA by establishing: (1) the employer is subject to the ADA; (2) the plaintiff was disabled within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *Id.* The analysis for a claim of failure to accommodate under the NYSHRL is substantially the same. *Aiola v. Malverne Union Free Sch. Dist.*, No. 15-cv-64, 2017 WL 3917018, at *8 (E.D.N.Y. Sept. 5, 2017) (citing *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 236, 351 (E.D.N.Y. 2010)) (noting that, except only for differing language in the definition of a "disability," which is not relevant in this case, "the analysis for the[] other elements [of a failure to accommodate claim under the NYSHRL] is identical to the analysis under the ADA").

Here, Plaintiff made his first request for accommodations on September 5, 2013.  (Pl.'s 56.1 ¶ 59.)  On October 10, 2013, Plaintiff was granted the accommodations of central air conditioning in a first-floor classroom, a rolling walker, and a teaching stool with wheels, and he was informed that he would not be required to escort students or accompany them on school trips.  (*Id.* ¶ 63.)  Although Plaintiff does not dispute that he received accommodations, he contends that the accommodations he received were inadequate.[7]  (Defs.' Reply 56.1 ¶¶ 145-50.) With respect to air conditioning, Plaintiff testified that the only year he did not have air conditioning in his classroom was in the 1998-1999 school year, which was outside of the relevant time period.  (*Id.* ¶¶ 133, 243; Wolin Decl. Ex. 1 at 90:16-24.)  Plaintiff complains, however, that the central air did not work properly and that he did not receive a portable air conditioner after requesting one.  (Defs.' Reply 56.1 ¶¶ 149-50.)

Yet, the ADA "does not require the employer to provide every accommodation a disabled employee may request," nor does it "obligate the employer to meet the personal preferences of disabled employees."  *Robinson v. Roosevelt Union Free Sch. Dist.*, No. 10-cv-384, 2012 WL 1980410, at *9 (E.D.N.Y. May 31, 2012) (quoting *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d. 352, 368 (E.D.N.Y. 2012) and *Raffaele v. City of New York*, No. 00-cv-3837, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004)).  Rather, "[a]ccommodations need only be sufficient to meet the job-related needs of the individual being accommodated."  *Raffaele*, 2004 WL 1969869, at *16.)*; see also Turowski v. Triarc Companies, Inc*., 761 F. Supp. 2d 107, 111 (S.D.N.Y. 2011) (quoting *Waltzer v. Triumph Apparel Corp*., No. 09 Civ. 288, 2010 WL 565428, at *6 (S.D.N.Y. Feb. 18, 2010)) (internal citations and quotations omitted) ("Employees

---

[7] Notably, Defendants also accommodated Plaintiff's requests even before he made a formal request for accommodations by, for example, providing him with an easel in May 2012 that would allow him to write sitting down.  (Pl.'s 56.1 ¶ 37.)

are not entitled to hold out for the most beneficial accommodation, and [an] employer need not offer the accommodation that the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends.").  Plaintiff has not demonstrated that Defendants' accommodations were inadequate or unreasonable—only that Plaintiff was dissatisfied with them.  *Krinsky v. Abrams*, No. 01CV5052, 2007 WL 1541369, at *13 (E.D.N.Y. May 25, 2007) ("However, under the ADA, 'an employee has no right to any particular accommodation, but merely to a reasonable accommodation.'") (quoting *Thompson v. City of New York,* No. 03 Civ. 4182, 2006 WL 2457694, at *5 (S.D.N.Y. 2006) (noting that "under the ADA, 'an employee has no right to any particular accommodation, but merely to a reasonable accommodation[,]'" and finding that, although plaintiff was dissatisfied with a particular accommodation, he produced no evidence to show that the steps taken by defendants were inadequate, and defendants reasonably accommodated plaintiff), *aff'd*, 305 F. App'x 784 (2d Cir. 2009).

There may be a question of fact as to whether the central air was working properly at all times.  Even drawing this inference in favor of Plaintiff, however, his failure to accommodate claim would nonetheless fail.  That is, Plaintiff cannot prove that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation.  *Sista*, 445 F.3d at 169 (outlining prima facie case).  This deficiency alone is fatal to Plaintiff's claim.  The record demonstrates that Defendants repeatedly sought to provide Plaintiff with additional support because he was struggling pedagogically.  Not only did Defendants refer Plaintiff to Ms. DeJean for additional help, but they also encouraged him to enroll in the PIP Plus program. (McIntosh Decl. Ex. X at D001336.)  Plaintiff refused Defendants' offers of assistance.  (Pl.'s 56.1 ¶ 69.)  Further, Plaintiff received multiple complaints from parents regarding his teaching

and comportment among students.  (Pl.'s 56.1 ¶¶ 15, 30; Defs.' Reply 56.1 ¶ 195.)  He submitted

work plans and administrative paperwork long after the deadlines had passed, or never handed in

his work at all.  (Pl.'s 56.1 ¶¶ 23, 50.)  Based on the undisputed facts and record, Plaintiff has not

demonstrated that he was qualified with or without accommodation, and indeed, his repeated

failure to meet the demands of his position shows that he was not qualified.  Accordingly,

Plaintiff fails to make out a prima facie case of disability discrimination on a theory of failure to

accommodate under the ADA and NYSHRL.

Plaintiff's NYCHRL failure to accommodate claim fails for the same reasons.  *Snowden

v. Trustees of Columbia University*, 612 F. App'x 7, 10 (2d Cir. 2015) (summary order)

(evaluating NYCHRL claims separately and affirming dismissal of NYCHRL failure to

accommodate claim on summary judgment).  Even construing Plaintiff's claims broadly in his

favor, as the Court must when evaluating NYCHRL claim, the Court still finds that Plaintiff

could not have performed the essential functions of his position, with or without reasonable

accommodation.  *Id.*  Therefore, Plaintiff's NYCHRL failure to accommodate claim also fails on

the merits.

## III.    Retaliation

### A.  ADA and NYSHRL

Plaintiff's retaliation claims also fail on the merits.  As with Plaintiff's discrimination

claims, claims of retaliation under the ADA and NYSHRL are examined under the *McDonnell

Douglas* burden shifting test.  *Campbell v. New York City Transit Authority*, 93 F. Supp. 3d 148,

174 (E.D.N.Y. 2015) (summary order) (applying *McDonnell Douglas* framework to retaliation

claims under Title VII, ADEA, and ADA), *aff'd*, 662 F. App'x 57 (2d Cir. 2016); *Hernandez v.

Hampton Bays Union Free Sch. Dist.*, No. 12-cv-789, 2015 WL 667844, at *5 (E.D.N.Y. Feb.

13, 2015) (applying same framework to NYSHRL).  At the first step of this test, a plaintiff must

establish a prima facie case of retaliation.  *Fincher v. Depository Trust & Clearing Corp.*, 604

F.3d 712, 720 (2d Cir. 2010).  A plaintiff may do so by demonstrating that (1) he engaged in

protected activity; (2) the employer was aware of the activity; (3) the employee suffered a

materially adverse employment action; and (4) there was a causal connection between the

alleged adverse action and the protected activity.[8]  *Campbell*, 93 F. Supp. 3d at 174.

    There is no dispute that Plaintiff engaged in protected activity by filing various

complaints against the Defendants, including complaints with the OEO, the EEOC, in state court,

and in federal court.  There is also no dispute that Defendants were aware of that activity.

Further, there is no "bright line" rule with respect to what constitutes an adverse employment

action for purposes of a retaliation claim.  *Fincher*, 604 F.3d at 721.  However, a plaintiff

bringing a retaliation claim must show that a reasonable employee would have found the

challenged action materially adverse.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

67-68 (2006).  This means that the adverse action was not trivial and would deter a reasonable

person from engaging in protected activity.  *Id.* at 67-68.  Citing this more generous standard,

Plaintiff refers to a "long litany" of conduct by Defendants, but makes particular mention of the

unsatisfactory observations, negative letters to file, and counseling memoranda that Defendants

gave Plaintiff.  (Pl.'s Mem. Opp. Mot. Summ. J. 20-22, ECF No. 43.)  The Court agrees that

these actions are sufficiently adverse.

    Plaintiff must still demonstrate a causal connection between his protected activities and

any adverse employment actions he sustained.  A plaintiff may establish such a causal

---

[8] The Second Circuit has not yet decided whether a plaintiff must prove "but-for" causation in ADA retaliation claims, as one must when bringing a retaliation claim under Title VII. *Campbell v. New York City Transit Authority*, 662 F. App'x 57, 60 n.3 (2d Cir. 2016) (summary order).

connection either through direct evidence of retaliatory animus or indirectly through circumstantial evidence. *Butler v. Potter*, No. 06-cv-3828, 2009 WL 804722, at *9-10 (E.D.N.Y. Mar. 26, 2009). The record is devoid of any direct evidence of retaliatory animus. For example, there is no evidence that Defendants threatened Plaintiff or made comments that would indicate that Defendants had any retaliatory motive. *See Douglas v. Hip Centralized Lab. Servs., Inc.*, No. 03-cv-205, 2005 WL 1074959, at *3 (E.D.N.Y. Apr. 29, 2005) (collecting cases and finding no direct evidence of retaliatory animus where plaintiff did not adduce evidence of retaliatory statements); *cf. Mandell*, 316 F.3d at 383 (direct evidence of retaliatory animus found where termination letter stated that plaintiff was being moved for having "branded the entire department as racists and anti-Semites"); *Riisna v. Am. Broad. Co., Inc.*, 219 F. Supp. 2d 568, 571 (S.D.N.Y. 2002) (finding direct evidence of retaliatory animus where email stated that plaintiff was being removed from project because she had filed an EEOC charge against the company).

Where there is no direct evidence of retaliatory animus, proof of causation may be shown indirectly by demonstrating that the protected activity was followed closely by a retaliatory action. *Id.*; *Frazier v. City of N.Y. Dep't of Correction*, No. 14-cv-1224, 2016 WL 4444775, at *4 (E.D.N.Y. Aug. 23, 2016) (citing *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 307 F. App'x 596, 599 (2d Cir. 2009)). The Second Circuit has not explicitly defined the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship. *Frazier*, 2016 WL 4444775, at *4 (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)). However, district courts in this Circuit have "consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Id.* (collecting cases); *see also*

*Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases dismissing retaliation claims where there was a three- to four-month gap between protected activity and adverse employment action); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Here, Plaintiff filed a number of OEO and EEOC complaints, grievances, and state and federal lawsuits against Defendants. No adverse employment action can be connected to Plaintiff's September 23, 2010 complaint against Lena Corso, with which Honore purportedly assisted Plaintiff. In the months following that complaint, Plaintiff was referred to Ms. DeJean for extra help on October 4, 2010, and on November 10, 2010, Plaintiff was instructed to come up with a remedial plan with regard to a parent's complaints. (Pl.'s 56.1 ¶¶ 14-15.) Although Plaintiff was reassigned to the position of math specialist in January 2011, the Court finds that the four-month gap between Plaintiff's complaint and this reassignment is too attenuated to demonstrate causation. (*See id.* ¶ 16.)

Plaintiff's June 17, 2011 grievance regarding Defendants' failure to give him his first choice teaching assignment cannot sustain Plaintiff's retaliation claims because it failed to put Defendants on notice that Plaintiff was complaining of discrimination. That is, the grievance made no mention of discrimination, but rather alleged a violation of Plaintiff's collective bargaining agreement. *See Bowen-Hooks*, 13 F. Supp. 3d at 222 (stating, in Title VII retaliation context, that a complaint of discrimination must put defendant on notice that plaintiff is contesting discriminatory conduct prohibited by statute). For the same reason, Plaintiff's June 1, 2012 grievance for Defendants' failure to assign him to his requested math/science cluster position does not give rise to a cognizable claim of retaliation. (Pl.'s 56.1 ¶ 44.)

Any adverse actions following Plaintiff's July 13, 2011 EEOC complaint are too temporally remote from his protected conduct to be actionable. Indeed, the first legally cognizable adverse action subsequent to the July 2011 EEOC filing did not occur until Honore's negative performance review of Plaintiff on January 10, 2012. The other purported adverse actions, such as one parent's October 17, 2011 request that her child be removed from Plaintiff's class, cannot be imputed to Defendants. (*Id.* ¶ 24.) Similarly, the negative evaluation that Plaintiff received following his December 5, 2012 and June 27, 2013 EEOC complaints occurred four months or more after Plaintiff filed those complaints. (*Id.* ¶¶ 52, 57.) Because they are temporally attenuated, these complaints cannot sustain a prima facie case of retaliation.

In contrast with the above examples, the ten-day period between Plaintiff's January 9, 2012 state court complaint against Defendants and the January 19, 2012 letter from Honore is sufficient to establish a causal connection. In that letter, Honore outlined concerns regarding a January 10, 2012 observation and informed Plaintiff that he would be observed again in the near future. (*Id.* ¶ 28.) As a consequence, Plaintiff was referred for extra help. (*Id.* ¶¶ 28-29.) Because the scope of actions that may be materially adverse for purposes of a retaliation claim is broader than those prohibited for purposes of a discrimination claim, the Court will construe the January 19, 2012 letter as an adverse action. *See Bowen-Hooks*, 13 F. Supp. 3d at 224-29 (counseling memorandum and other actions, including negative evaluations, assumed to be adverse actions for purposes of retaliation claim); *Spaulding v. New York City Dep't of Educ.*, 2015 WL 12645530, at *43 (E.D.N.Y. Feb. 19, 2015) (construing negative evaluations following protected activity as adverse employment action in retaliation context), *report and recommendation adopted*, 2015 WL 5560286, at *1 (E.D.N.Y. Sept. 21, 2015). The January 19, 2012 letter was issued only ten days after Plaintiff filed his state court complaint. Therefore,

Plaintiff arguably has made out a prima facie case of retaliation with respect to that complaint. Similarly, with respect to Plaintiff's October 24, 2013 federal complaint in the instant case, Plaintiff received one negative evaluation every month during the three months that followed. (Pl.'s 56.1 ¶¶ 64-67.) For the same reasons, the Court construes Plaintiff's November 21, 2013, December 5, 2013, and January 6, 2014 evaluations as supporting a prima facie case of retaliation.

Once a plaintiff makes out a prima facie case of retaliation, a presumption of retaliation arises, and the employer must articulate a legitimate, non-retaliatory reason for the challenged action. *Fincher*, 604 F.3d at 720. If the employer succeeds in doing so, then the presumption of retaliation dissipates, and the plaintiff must show that the non-retaliatory reason was pretextual. *McPhatter v. New York City*, 378 F. App'x 70, 72 (2d Cir. 2010) (summary order). Here, although Plaintiff has made out a prima facie case of retaliation with respect to his January 9, 2012 state court complaint and October 24, 2013 federal court complaint, Defendants have met their burden of persuasion in articulating a legitimate, non-discriminatory reason for their evaluations of Plaintiff. Specifically, the record demonstrates that Defendants consistently made efforts to work with Plaintiff, giving him extensions on assignments, which he continually handed in late, as well as professional development opportunities that he refused. (Pl.'s 56.1 ¶¶ 23, 50, 69.) Plaintiff has not demonstrated that these reasons were mere pretext. Temporal proximity alone is insufficient to show that Defendants' non-retaliatory reasons were pretextual. *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 381 (E.D.N.Y. 2015) (granting summary judgment on retaliation claim, reasoning that temporal proximity alone failed to support pretext). Further, Plaintiff's conclusory assertions that he "disagrees" with the negative evaluations are also insufficient to demonstrate pretext. *See id.* (rejecting Plaintiff's argument

that negative feedback was false).  As such, the Court finds that summary judgment would be warranted as to Plaintiff's ADA and NYSHRL retaliation claims even if they were not already collaterally estopped.

## B. NYCHRL

Although the same burden-shifting test applies to retaliation claims brought under the NYCHRL, courts must analyze such claims separately and independently from federal and state law claims, broadly construing the NYCHRL's provisions in favor of plaintiffs to the extent that such a construction is reasonably probable.  *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015) (dismissing NYCHRL retaliation claim on summary judgment).  The NYCHRL protects Plaintiffs who oppose any practice the law forbids from conduct "reasonably likely to deter a person engaging in such action."  *Id.* at 76 (quoting *Mihalik*, 715 F.3d at 112). As discussed more fully above, the Court has already determined that Plaintiff makes out a prima facie case of retaliation for the filing of his state court complaint and October 24, 2013 EEOC complaint.  *Ugactz v. United Parcel Service, Inc.*, No. 10-cv-1247, 2013 WL 1232355, at *21 n.38 (E.D.N.Y. Mar. 26, 2013) (reasoning that Plaintiff met NYCHRL retaliation standard where stricter ADA and NYSHRL standards were satisfied).  This is sufficient to establish a prima facie case of retaliation under the NYCHRL.

Notwithstanding the fact that Plaintiff has established a prima facie case of retaliation under the NYCHRL, summary judgment would still be warranted.  As with Plaintiff's federal and state claims, once a prima facie case of retaliation is established, the burden shifts back to the plaintiff to demonstrate that the proffered reason was actually pretext.  *Ryan v. New York City Dep't of Educ.*, No. 11-cv-1628, 2011 WL 4899923, at *4 (E.D.N.Y. Oct. 13, 2011) (dismissing retaliation claims under Title VII, NYSHRL, and NYCHRL).  The Court finds that summary

judgment would be warranted as to Plaintiff's NYCHRL retaliation claims for the same reasons articulated above, namely, that Defendants have demonstrated that Plaintiff continually struggled to improve his pedagogy, refused help, and failed to follow the DOE's rules. *See Ryan*, 2011 WL 4899923, at *5 (plaintiff's continued deficiencies provided legitimate, non-retaliatory reason for termination). Plaintiff has not come forward with any evidence demonstrating pretext. Accordingly, even if the Court had determined that this claim was not collaterally estopped, it would grant Defendant's motion for summary judgment as to Plaintiff's NYCHRL claims.

## IV. Hostile Work Environment

### A. ADA and NYSHRL

The Second Circuit has not yet expressly decided whether a hostile work environment claim is cognizable under the ADA, but has assumed, without holding, that it is. *See, e.g.*, *Flieger v. Eastern Suffolk BOCES*, 2017 WL 2377853, at *3 (2d Cir. June 1, 2017). When evaluating such claims, courts employ the same standard as applied in Title VII cases. *Mazur v. New York City Dep't of Educ.*, 53 F. Supp. 3d 618, 637 (S.D.N.Y. 2014), *aff'd* 621 F. App'x 88 (2d Cir. 2015). Hostile work environment claims brought under the NYSHRL are likewise evaluated under the same standard. *See, e.g., Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 424-25 (E.D.N.Y. 2012) (stating that NYSHRL hostile work environment claims are evaluated under Title VII standard).

To prevail on a hostile work environment claim under the ADA or NYSHRL, a plaintiff must show that severe "discriminatory intimidation, ridicule, and insult" permeated his workplace, altering the conditions of his employment and creating an abusive work environment. *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A plaintiff must generally identify more than episodic incidents

and demonstrate that the complained-of conduct was pervasive, continuous, and concerted. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Isolated incidents, unless very serious, do not meet the threshold of severity or pervasiveness. *Id.* Nor will complaints about ordinary managerial decisions satisfy this standard. *Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08-cv-5454, 2011 WL 4530193, at *8 (S.D.N.Y. Sept. 30, 2011).

Further, it is axiomatic that a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (finding of hostile work environment in gender discrimination context required demonstration that conduct occurred because of plaintiff's sex); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 262 (E.D.N.Y. 2009) ("Although the incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred, they must occur under circumstances in which the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." (internal quotation marks omitted)). An environment that arises from personal animosity without a connection to a plaintiff's protected trait is not actionable. *Krinsky*, 2007 WL 1541369, at *9-10 (quoting *White v. Fuji Photo Film USA, Inc.,* 434 F. Supp. 2d 144, 154 (S.D.N.Y. 2006)).

**B. NYCHRL**

Hostile work environment claims brought under the NYCHRL are evaluated under a more lenient standard. Unlike its federal and state counterparts, the NYCHRL "allows liability to attach for harassing conduct that does not qualify as severe or pervasive." *Fleming*, 644 F. Supp. 2d at 268. Instead, the primary issue in assessing a NYCHRL hostile work environment claim is whether the plaintiff was treated less well than other employees because of his disability. *See id.* (assessing whether Plaintiff was treated less well because of protected characteristic in

evaluating NYCHRL hostile work environment claim).  Therefore, summary judgment should normally be denied if there exist triable issues of fact as to whether such conduct occurred.  *Id.* (quoting *Williams*, 872 N.Y.S. 2d at 39).  However, the NYCHRL is "not a general civility code," and as such, it does not impose liability for "petty slights and trivial inconveniences."  *Id.*; *accord Mihalik*, 715 F.3d at 109-11.

Plaintiff's memorandum of law does not explicitly identify the conditions or incidents purportedly giving rise to a hostile work environment.  Rather, he refers the Court to his Rule 56.1 opposition, contending that he has "allege[d] a panoply of allegations supporting his claim" that go "far beyond actions 'to document and correct plaintiff's steady declining performance' . . . as [D]efendants would have us believe."  (Pl.'s Mem. 24-25.)  Plaintiff proffers, among other things, that he was subjected to "strict scrutiny" and was observed far more frequently than his fellow teachers.  (Defs.' Reply 56.1 ¶ 254.)  Plaintiff also maintains that Defendants "threatened" him, (*id.* ¶ 250), issued "false" reports and observations, (*id.* ¶ 219), "encouraged" parents to request that their children be transferred out of his class, (*id.* ¶ 248), "sought to undermine" him, (*id.* ¶ 241), failed to provide him with pedagogical support, (*id.* ¶ 218), encouraged students to falsely testify against him, (*id.* ¶ 204), and gave him feedback in a "critical fashion."  (*Id.* ¶ 200.) However, these claims are not substantiated by admissible evidence in the record.  Further, even if the record supported any of these contentions, there is no support in the record that Plaintiff was treated worse than other teachers because of his disability.  *Fleming*, 644 F. Supp. 2d at 264 (dismissing hostile work environment claims were there was no basis to conclude that any mistreatment was based on protected characteristic); *see also Alfano*, 294 F.3d at 377 ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude

from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals."). Accordingly, Plaintiff's hostile work environment claims under the ADA, NYSHRL, and NYCHRL are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court is respectfully requested to enter judgment in accordance with this Memorandum and Order and to close both cases.

SO ORDERED:

 /s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
         September 30, 2017